# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA PATRICIA MORENO VERGEL,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,[1]<br><br>Respondents. | Case No. 1:25-cv-01931-EPG-HC<br><br>ORDER JOINING CHRISTOPHER CHESTNUT AS RESPONDENT<br><br>ORDER GRANTING PRELIMINARY INJUNCTION[2] AND DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF No. 2)<br><br>ORDER REGARDING FURTHER BRIEFING |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the

---

[1] Respondents note that "Petitioner appears to have improperly named Core Civic, Inc. in this lawsuit instead of the warden of the California City facility, Christopher Chestnut." (ECF No. 13 at 2 n.2.) "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024). "The Court 'may join Petitioner's custodian on its own initiative pursuant to Federal Rule of Civil Procedure 19(a).'" Cinthia Jessica C.Q. v. CoreCivic Inc., No. 1:25-cv-01900-KES-SKO (HC), 2025 WL 3694459, at n.1 (E.D. Cal. Dec. 19, 2025) (quoting Jones v. Schwarzenegger, No. C07-4323 JSW (PR), 2008 WL 94771, at *1 n.1 (N.D. Cal. Jan. 8, 2008)). Accordingly, the Court joins Christopher Chestnut as a Respondent to this action.

[2] The Court converts Petitioner's motion for temporary restraining order into a motion for preliminary injunction. Respondents had notice, opportunity to respond, and the ability to be heard. There is no benefit in additional briefing, and the standard is the same. As such, given the nature of the relief granted by this order and so as to appropriately permit Respondents the ability to appeal should they choose to do so, the Court converts this to a motion for preliminary injunction. See Bennett v. Medtronic, Inc., 285 F.3d 801, 804 (9th Cir. 2002) ("Ordinarily, temporary restraining orders, in contrast to preliminary injunctions, are not appealable . . . .").

jurisdiction of a United States magistrate judge. (ECF Nos. 10–12.) For the reasons stated herein, the Court grants a preliminary injunction and orders Petitioner's immediate release.

## I.

## BACKGROUND

Petitioner, a native and citizen of Colombia, was apprehended by U.S. Customs and Border Protection on December 2, 2022. (ECF No. 2-1 at 2; ECF No. 2-2 at 2.[3]) Petitioner was granted parole from December 5, 2022, through February 4, 2023. (ECF No. 2-1 at 2; ECF No. 2-2 at 7.) Petitioner was instructed to report to the local U.S. Immigration and Customs Enforcement ("ICE") office within sixty days for an Alternative to Detention ("ATD") suitability interview, and Petitioner was enrolled in the ATD program. (ECF No. 2-1 at 2; ECF No. 2-2 at 5, 9, 11.)

As part of her application for asylum, Petitioner filed a Form I-589. She received a U.S. Citizenship and Immigration Services ("USCIS") appointment notice on December 2, 2023, which she attended on December 19, 2023, and completed her biometrics submission. (ECF No. 2-1 at 3; ECF No. 2-2 at 13.) According to the Executive Office for Immigration Review ("EOIR") "automated system, a docket date of August 20, 2024, suggests that a Notice to Appear may have been filed with the Immigration Court." (ECF No. 2-1 at 3 (citing ECF No. 2-2 at 15).)

On November 15, 2025, Petitioner was detained at her residence after ICE officers appeared indicating they only needed to ask her some questions related to the asylum process. However, the officers did not clearly explain the reason for Petitioner's detention. (ECF No. 2-2 at 28.) Petitioner is currently held at the California City Detention Facility. (ECF No. 2-1 at 3; ECF No. 2-2 at 28.)

On December 18, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 2.) On December 29, 2025, Respondents filed an opposition to the motion for TRO and response to the habeas petition. (ECF No. 13.) On December 31, 2025, Petitioner filed a reply. (ECF No. 14.)

---

[3] Page numbers refer to the ECF pagination stamped at the top of the page.

## II.

## DISCUSSION

### A. Preliminary Injunction Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Glossip v. Gross, 576 U.S. 863, 876 (2015) (internal quotation marks omitted) (quoting Winter, 555 U.S. at 20). The Ninth Circuit "has adopted the 'serious questions' test—a 'sliding scale' variant of the *Winter* test—under which a party is entitled to a preliminary injunction if it demonstrates":

> (1) "serious questions going to the merits," (2) "a likelihood of irreparable injury," (3) "a balance of hardships that tips sharply towards the plaintiff," and (4) "the injunction is in the public interest." *Id.* at 1135.[4] As to the first factor, the serious questions standard is "a lesser showing than likelihood of success on the merits." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1190 (9th Cir. 2024) (footnote added).

### B. Likelihood of Succeeding on the Merits

Petitioner contends that she "is likely to succeed on the merits of her claim challenging her re-arrest and continued detention without a bond redetermination hearing. It is firmly established that individuals released under INA § 236(a) retain a protected liberty interest, and absent a material change in circumstances justifying detention, they should remain free." (ECF No. 2-1 at 4.) Respondents argue that "Petitioner's prior release in the discretion of DHS, even if the release document cited 8 U.S.C. § 1226, does not have the effect of having converted petitioner's presence in the United States into an 'admission.'" (ECF No. 13 at 2.) Respondents contend that "[a]s an applicant for admission, petitioner is subject to mandatory detention and thus ineligible for a bond hearing." (ECF No. 13 at 2.) "Further, respondents do not cite specific

---

[4] Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

changed circumstances as justification for detention . . . but instead rely on the mandatory-detention authority provided in section 1225(b)(2)(A)." (ECF No. 13 at 2–3.)

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). 8 U.S.C. § 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Id. The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are

> instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

> Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Id.* As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323. The government's briefing in this case acknowledges that its position historically was that section 1226(a) was "an available detention authority for aliens [present without being admitted or paroled] placed in full removal proceedings under § 1229a." (Dkt. No. 16 ("Opp.") at 12.)
>
> However, the government now disavows its prior position in light of subsequent "legal developments," including its 2025 designation "restor[ing] the scope of expedited removal to the fullest extent authorized by Congress," 90 Fed. Reg. at 8139. (Opp. at 12.) It contends that section 1225 is "the sole applicable detention authority for *all* applicants for admission" and asserts that all applicants for admission are "subject to the mandatory detention framework" of section 1225(b). (Opp. at 12, 14.)

Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, --- F. Supp. 3d ----, 2025 WL 2741654, at *4 (N.D. Cal. Sept. 26, 2025) (footnote omitted).

"Here in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for

admission.'" Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, --- F. Supp. 3d ----, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (citing Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), --- F. Supp. 3d ----, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Rodriguez v. Kaiser, No. 1:25-cv-01111-KES-SAB (HC), 2025 WL 2855193 (E.D. Cal. Oct. 8, 2025); Ortiz Donis v. Chestnut, No. 1:25-cv-01228 JLT SAB, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Menjivar Sanchez v. Wofford, No. 1:25-cv-01187-SKO (HC), 2025 WL 2959274 (E.D. Cal. Oct. 17, 2025)). Contra Valencia, 2025 WL 3205133, at *2 (declining to follow said cases, finding "petitioner is unlikely to prevail on his statutory arguments," and denying temporary restraining order); Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, --- F. Supp. 3d ----, 2025 WL 3208284, at *3, 5 (E.D. Cal. Nov. 17, 2025) (finding that "[n]otwithstanding the majority view," petitioner failed to make "a sufficient showing of the likelihood of success on his statutory claim" yet noting "[t]his finding should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) -- which is in line with the expansive understanding of mandatory detention applicability -- is correct" but rather "only that petitioner has failed to show a likelihood of success on it").

Additionally, "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States." Valencia, 2025 WL 3205133, at *2 (citing Garcia v. Noem, No. 25-cv-02180-DMS-MMP, --- F.Supp.3d ----, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Martinez v. Noem, No. EP-25-CV-430 KC, 2025 WL 2965859 (W.D. Tex. Oct. 21, 2025) (acceptance of DHS's new interpretation represents "a minority view"); Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025)). Contra Chavez v. Noem, No. 3:25-cv-02325-CAB-SBC, --- F.Supp.3d ----, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Mejia Olalde v. Noem, No. 1:25-cv-001568-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025).

This Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory

interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025). See Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016, at *9 (E.D. Cal. Dec. 4, 2025) ("acknowledg[ing] that two recent decisions in this district accepted Respondents' new interpretation of § 1225(b)(2)," but distinguishing those decisions because "unlike Petitioner, the petitioners in *Valencia* and *Alonzo* had never been encountered, let alone processed, by immigration officials, and had not been released on recognizance pending completion of Section 240 removal proceedings"). Based on the foregoing, Petitioner has demonstrated that she is likely to succeed in showing that the statutory basis of her detention is 8 U.S.C. § 1226(a).

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

1. Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition

7

> is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the Court finds that Petitioner is likely to demonstrate that she has a protected liberty interest in remaining out of immigration custody.

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration

detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that she posed neither a flight risk nor a danger. Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *4 (E.D. Cal. Dec. 9, 2025) (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S., 2025 WL 3167826, at *10 (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government

9

has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024) (confirming that the government bears the "clear-and-convincing burden of proof" at an immigration bond hearing ordered pursuant to the Due Process Clause); Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the

1 government must prove that she is a flight risk or danger to the community by clear and
2 convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108,
3 at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by
4 the government that the noncitizen is not a danger to the community or a flight risk. Since it is
5 the government that initiated re-detention, it follows that the government should be required to
6 bear the burden of providing a justification for the re-detention."). "Moreover, several courts
7 have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held
8 that despite such discretion, changed circumstances are necessary in order to revoke parole under
9 § 1226." Tenorio Rugama v. Chestnut, No. 1:25-cv-1918 AC, 2025 WL 3707234, at *4 (E.D.
10 Cal. Dec. 22, 2025) (collecting cases).

11 Based on the foregoing, Petitioner has demonstrated that she is likely to succeed in
12 showing that she has a strong liberty interest in remaining out of custody, that the risk of
13 erroneous deprivation will be meaningfully reduced by requiring notice and a pre-detention
14 hearing before a neutral decisionmaker, and that the governmental burden in providing such
15 procedure is quite minimal.

**C. Likelihood of Suffering Irreparable Harm**

17 "In addition to a likelihood of success on the merits, '[a] plaintiff seeking a preliminary
18 injunction must establish . . . that he is likely to suffer irreparable harm in the absence of
19 preliminary relief.'" Hernandez, 872 F.3d at 994 (quoting Winter, 555 U.S. at 20). In Hernandez,
20 the Ninth Circuit found the district court did not abuse its discretion in entering an injunction that
21 required immigration officials to consider financial circumstances and alternative conditions of
22 release at the bond hearings of a class of noncitizens in removal proceedings who were detained
23 pursuant to 8 U.S.C. § 1226(a). Hernandez, 872 F.3d at 981–82. With respect to the second
24 Winter factor, the Ninth Circuit found:

> Here, Plaintiffs have established a likelihood of irreparable harm
> by virtue of the fact that they are likely to be unconstitutionally
> detained for an indeterminate period of time.
>
> "It is well established that the deprivation of constitutional rights
> 'unquestionably constitutes irreparable injury.'" *Melendres v.
> Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v.*

> *Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).
> Thus, it follows inexorably from our conclusion that the
> government's current policies are likely unconstitutional—and thus
> that members of the plaintiff class will likely be deprived of their
> physical liberty unconstitutionally in the absence of the
> injunction—that Plaintiffs have also carried their burden as to
> irreparable harm.

Hernandez, 872 F.3d at 994–95. Similarly, here, the Court has concluded that Petitioner is likely to succeed on the merits of her due process claim, and thus, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [she is] likely to be unconstitutionally detained for an indeterminate period of time" in the absence of preliminary relief. Hernandez, 872 F.3d at 994. See Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.").

### D. Balance of Equities and the Public Interest

To obtain a preliminary injunction, Petitioner must also demonstrate that "the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20. "When, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" Baird, 81 F.4th at 1040 (citing Nken v. Holder, 556 U.S. 418, 435 (2009); Roman v. Wolf, 977 F.3d 935, 940–41 (9th Cir. 2020) (per curiam)). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." Baird, 81 F.4th at 1042. "Because 'public interest concerns are implicated when a constitutional right has been violated, . . . all citizens have a stake in upholding the Constitution,' meaning 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Id. (first quoting Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005); then quoting Riley's American Heritage Farms v. Elsasser, 32 F.4th 707, 731 (9th Cir. 2022)). "The government also 'cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.'" Baird, 81 F.4th at 1042 (quoting Zepeda v. INS, 753 F.2d 719, 727 (9th Cir. 1983)). Accordingly, the Court finds that the balance of equities tips in Petitioner's favor and that an injunction is in the public interest.

### E. Conclusion

In sum, the Court finds that the requirements for issuing a preliminary injunction are satisfied. The Court now turns to the appropriate remedy. "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)). "'Status quo ante litem' refers to 'the last uncontested status which preceded the pending controversy.'" Boardman, 822 F.3d at 1024 (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)).

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings based on the government's new interpretation of 8 U.S.C. § 1225(b). In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

13

Here, "respondents do not cite specific changed circumstances as justification for detention . . . but instead rely on the mandatory-detention authority provided in section 1225(b)(2)(A)." (ECF No. 13 at 2–3.) Respondents do not contend that Petitioner is a danger or flight risk. Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy and is required to return her to the status quo ante litem.

### F. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court retains discretion 'as to the amount of security required, *if any*.'" Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003). "Courts regularly waive security in cases like this one," J.A.E.M., 2025 WL 3013377, at *9 (collecting cases), and given the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," Zepeda, 753 F.2d at 727, the Court finds that no security is required.

## III.
## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. Christopher Chestnut is JOINED as a Respondent in this matter.
2. Petitioner's motion for temporary restraining order (ECF No. 2) is converted to a motion for preliminary injunction and it is **GRANTED**.
3. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Claudia Patricia Moreno Vergel from custody with the same conditions she was subject to immediately prior to her detention on November 15, 2025.

///

4. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating her arrest and detention—and a pre-deprivation hearing before a neutral decisionmaker. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.

5. Within two (2) days of the date of service of this order, Respondents SHALL FILE a status report confirming that Petitioner has been released from custody.

6. Petitioner may file a reply brief on the merits within THIRTY (30) days of the date of service of this order.

IT IS SO ORDERED.

Dated: **January 5, 2026**          /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE